IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WILLIAM PARKER,<br>Plaintiff,<br><br>v.<br><br>PATRICK "PAT" LABAT, individually and in his official capacity as Sheriff of Fulton County, Georgia, and FULTON COUNTY SHERIFF'S OFFICE,<br>Defendants. | CIVIL ACTION NO.<br>1:25-cv-3809-JPB-CMS |

**<u>FINAL REPORT AND RECOMMENDATION</u>**

Plaintiff William Parker, a former sheriff's deputy for the Fulton County Sheriff's Office ("FCSO") who is represented by an attorney, has sued the FCSO and Patrick "Pat" Labat, the Sheriff of Fulton County, Georgia. *See generally* [Doc. 18, Am. Compl.].[1] Parker asserts claims under Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Age Discrimination in Employment Act ("ADEA"), as well as First Amendment claims brought under 42 U.S.C. § 1983. *See generally* [*id.*]. The case is before the Court on Defendants' Motion to Dismiss [Doc.

---

[1] Parker's Complaint also named Fulton County, Georgia, as a defendant. [Doc. 1, Compl. at 1]. Parker's Amended Complaint, which is now the operative pleading, dropped Parker's claims against Fulton County. [Am. Compl. at 1].

21] and on the Court's January 5, 2025, Show Cause Order [Doc. 28]. The parties have fully briefed the motion to dismiss. [Doc. 21; Doc. 24; Doc. 25]. For the reasons below, I will recommend that the motion to dismiss be granted, and I will recommend that Plaintiff's counsel be sanctioned under Federal Rule of Civil Procedure 11(b).

# I. <u>MOTION TO DISMISS</u>

## A. Background

### 1. Parker's Allegations[2]

#### a. The Parties

Parker, who is male and was sixty-four years old when his employment with the FCSO ended, worked as a deputy sheriff III with the FCSO. [Am. Compl. ¶¶ 3, 29]. Labat is the Sheriff of Fulton County. [*Id.* ¶ 4]. Parker alleges that his job duties included transporting inmates from the Fulton County Jail to court, transporting inmates from other county jails to the Fulton County Jail, and transporting out-of-state prisoners to the Fulton County Jail. [*Id.* ¶ 29].

[2] The following facts are taken from the Amended Complaint, and the factual allegations are accepted as true for purposes of resolving the motions to dismiss. *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (per curiam).

### b. Parker Supports Labat's Opponent in the 2024 Election

In 2024, Fulton County held an election for Sheriff. [Am. Compl. ¶ 16]. Parker alleges that during the 2024 election, he "supported the candidacy of, and/or was associated/affiliated with [Labat's] opponent," James T. Brown. [*Id.* ¶ 16]. According to the Complaint, Parker "openly supported and participated" in Brown's the campaign. [*Id.* ¶ 30]. Parker states that he "engaged in constitutionally protected speech activities, including . . . expressive activity regarding a matter of public concern" by "publicly endorsing and actively speaking out in favor of" Brown's candidacy. [*Id.* ¶ 17]. Parker alleges that he "campaigned for Brown in the 2024 election by urging people to vote for him, putting out campaign signs, handing out literature, and attending campaign events." [*Id.* ¶ 18]. Parker states that he "expressed his view on numerous occasions that Brown was better qualified than [Labat] to hold the office of sheriff." [*Id.*]. According to the Amended Complaint, Labat knew about Parker's activities before April 2024. [*Id.* ¶¶ 16, 19, 31].

### c. Parker Allegedly Suffers Adverse Employment Actions

Parker alleges that before the 2024 election, Labat "took, or caused to be taken, various adverse employment actions" against Parker, including "involuntary termination of employment by or at the direction of [Labat]," "[r]eassignment of job

duties," "greater surveillance and supervision," and forcing Parker to resign on April 2, 2024. [Am. Compl. ¶¶ 21–22]. According to the Amended Complaint, "Defendants engaged in a blatant effort to force[] [Parker] to resign by way of a sustained campaign of intimidation and harassment including but not limited to unwarranted and unexplained diminution of his duties, deviations from the established chain of command such that he was ignored by his superiors who dealt directly with his subordinates (thereby greatly undermining his authority), and rude, insulting, intimidating and confrontational interrogations and other encounters with superiors." [*Id.* ¶ 33]. Parker alleges that "Defendants' pre-termination conduct "constituted a constructive demotion and an actionable pattern of harassment based on age, rendered unlawful by Title VII, and refusal to commit acts rendered unlawful by Title VII." [*Id.* ¶ 34].

According to the Amended Complaint, Defendants "constructively terminated" Parker's employment [Am. Compl. ¶ 19; *see also id.* ¶ 53 (alleging that Parker "was constructively discharged")]; "forced" Parker to resign from the FCSO on April 2, 2024 [*id.* ¶ 21]; had a supervisor notify Parker that Labat "was relieving [Parker] from duty" [*id.* ¶ 23]; and terminated Parker's employment [*id.* ¶¶ 30, 35]. Parker alleges that Defendants' actions were "substantially motivated by [Parker's] protected [s]peech activities." [Am. Compl. ¶ 19; *see also id.* ¶ 24 (alleging that

"[t]he involuntary termination of [Parker] was substantially motivated by [Parker's] political affiliation/association with [Labat's] opponent in the 2024 election")]. Parker also alleges that Defendants terminated him because of "his age[] and in retaliation for the exercise of his constitutional rights." [*Id.* ¶ 24; *see also* ¶ 35 (stating that Parker's termination was motivated by Parker's age and "his familial and political association with [Labat's] opponent"); *id.* ¶ 54 (alleging that Parker "was constructively demoted and terminat[ed] . . . in retaliation for protected opposition and participation activity)]. According to the Amended Complaint, Parker's termination was also motivated by Parker's "opposition to practices rendered unlawful under Title VII." [*Id.* ¶ 35].[3] Parker alleges that "[t]he retaliatory adverse actions taken against [him] . . . were such that a reasonable person in his position would be deterred from engaging in conduct protected by the First Amendment to the United States Constitution [and] by Title VII." [*Id.* ¶ 36].

---

[3] Parker also states, "[u]pon information and belief," that Labat "opposed the return of older retired sheriffs to the FCSO[] under the 1040 program," which allowed "a select group of qualified retired sheriff deputies to return to work for FCSO," and that Labat's opponent, Brown, "was over 40 years old and retired from the [FCSO]." [Am. Compl. ¶¶ 28, 32].

#### d. Parker Files an EEOC Charge

On September 12, 2024, Parker filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendants violated the ADEA. [Doc. 18 at 30–32].[4] On April 22, 2025, Parker received an email from the EEOC investigator stating that his case had been closed. [Am. Compl. ¶ 14; Doc. 18 at 33]. According to the Amended Complaint, Parker never received a copy of the Notice of Right to Sue. [Amended Compl. ¶ 14].

### 2. Procedural Background

On July 9, 2025, Parker filed a counseled Complaint. [Doc. 1, Compl.]. On October 10, 2025, Parker filed a counseled Amended Complaint. [Doc. 18, Am. Compl.]. Parker's Amended Complaint contains five counts, including three First Amendment claims brought under § 1983 (Counts One, Four, and Five) [*id.* ¶¶ 41–44, 55–64]; an ADEA disparate treatment claim (Count Two) [*id.* ¶¶ 45–49]; and a Title VII retaliation claim (Count Three) [*id.* ¶¶ 50–54].

---

[4] In his Amended Complaint, Parker alleges that he filed his Charge "[o]n or about April 12, 2025." [Am. Compl. ¶ 25]. Exhibit 2 to Parker's Amended Complaint, however, reflects that the EEOC acknowledged receiving Parker's Charge on September 12, 2024. [Doc. 18 at 32–33]. Exhibit 2 is controlling. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.").

On October 22, 2025, Defendants moved to dismiss the Amended Complaint. [Doc. 21]. The parties have fully briefed the motion to dismiss. [Doc. 21; Doc. 24; Doc. 25].

### B. Legal Standards

Defendants moved to dismiss some of Parker's claims under Rule 12(b)(6), and they moved to dismiss other claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *See generally* [Doc. 21-1].

#### 1. Standard Governing a Rule of 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint, or portions thereof, for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When reviewing a motion to dismiss, the Court must take the allegations of the complaint as true and must construe those allegations in the light most favorable to the plaintiff. *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (per curiam). Although a court is required to accept well-pleaded facts as true and make reasonable inferences in favor of the plaintiff, it need not accept the plaintiff's legal conclusions or unwarranted deductions of fact. *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012) (per curiam) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009));

*Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006); *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005) (per curiam).

A court may dismiss a complaint if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Chandler*, 695 F.3d at 1199 (internal quotation marks and citation omitted). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the Supreme Court stated that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Although factual allegations in a complaint need not be detailed, those allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations and footnote omitted).

Moreover, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The mere possibility that the defendant might have acted unlawfully is insufficient to allow a claim to survive a motion to dismiss. *Id.* Instead, the well-pleaded allegations of the complaint must move the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. But the factual allegations in a complaint can be sufficient to survive a motion to dismiss even though recovery may be remote or unlikely. *Id.* at 555–56.

As long as the facts alleged create a reasonable expectation that discovery will reveal evidence of the necessary elements, the plaintiff's suit should continue. *Id.* at 556

**2. Standard Governing a Rule 12(b)(1) Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a pleading based on "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1). "Attacks on subject matter jurisdiction, which are governed by Rule 12(b)(1), come in two forms: facial or factual attack. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021). A 'facial attack' challenges whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal quotation marks and citation omitted). "'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (internal quotation marks and citation omitted). "A district court evaluating a factual attack on subject matter jurisdiction 'may proceed as it never could' at summary judgment and 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Kennedy*, 998 F.3d at 1230 (quoting *Lawrence*, 919 F.2d at 1529). The

plaintiff bears the burden of proving that subject matter jurisdiction exists. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

### C. Discussion

#### 1. Parker Has Not Pled Plausible Claims Against the FCSO

Parker has asserted claims against the FCSO, but these claims fail as a matter of law because the FCSO is not a legal entity subject to suit. *See Brown v. Newton Cnty. Sheriff's Office*, 273 F. Supp. 3d 1142, 1161 (N.D. Ga. 2017) ("The Eleventh Circuit has examined Georgia law and concluded that sheriff's departments are not considered legal entities subject to suit."). The FCSO is also an improper defendant for Parker's § 1983 claims. *See Pierce v. Georgia*, No. 1:24-cv-1301-SEG-JKL, 2024 WL 6085418, at *2 (N.D. Ga. May 1, 2024) ("[T]he Fulton County Sheriff's Office is not a 'person' within the meaning of § 1983 and is also an improper defendant in a civil rights action."), *adopted by* 2024 WL 6085413 (N.D. Ga. July 2, 2024). All of Parker's claims against the FCSO should be dismissed.[5]

---

[5] Parker appears to believe that Defendants have moved for dismissal of his § 1983 claims against the FCSO based on Eleventh Amendment immunity. *See* [Doc. 24 at 10–11 (discussing Eleventh Amendment immunity in connection with § 1983)]. Defendants, however, argue only that the FCSO is not a legal entity subject to suit under § 1983 and that the FCSO is not a person for purposes of § 1983. [Doc. 21-1 at 8–9].

### 2. Parker Has Not Pled Plausible Claims Against Labat

#### a. Parker's § 1983 Official Capacity Claims Against Labat Are Barred by Eleventh Amendment Immunity

Labat argues that Eleventh Amendment immunity bars Parker's § 1983 claims for damages and retrospective injunctive relief asserted against Labat in his official capacity. [Doc. 21-1 at 9-11].[6] In his response to the motion to dismiss, Parker states that he is not seeking monetary damages or retrospective equitable relief against Labat in his official capacity. [Doc. 24 at 11]. The Court should grant this portion of the motion to dismiss and dismiss these claims without prejudice.[7]

---

[6] Defendants concede that "Eleventh Amendment immunity does not bar prospective injunctive relief under Section 1983." [Doc. 21-1 at 11]. As discussed below, Parker has not pled plausible underlying claims, and his claims for prospective injunctive relief likewise fail. *See Alabama v. U.S. Army Corps. of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) (noting that to obtain injunctive relief, "a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed.R.Civ.P. 12(b)(6) (failure to state a claim)") (internal quotation marks and citation omitted).

[7] A dismissal based on Eleventh Amendment immunity is a dismissal for lack of jurisdiction. *See Bouchard Transp. Co. v. Fla. Dep't of Envtl. Prot.*, 91 F.3d 1445, 1448 ("Eleventh Amendment immunity is in the nature of a jurisdictional bar."); *Stewart v. State Bd. of Pardons & Paroles*, No. 1:23-cv-830-CAP-JKL, 2023 WL 11979502, at *2 (N.D. Ga. Oct. 4, 2023) ("Because Eleventh Amendment immunity is jurisdictional, this Court lacks jurisdiction over Plaintiff's claims against the Board.") (footnote omitted), *adopted by* 2023 WL 11979498 (N.D. Ga. Nov. 8, 2023). The Eleventh Circuit has instructed that "[d]ismissals for a lack of

**b. Parker's § 1983 Individual Capacity Claims Against Labat Are Barred by Qualified Immunity**

With respect to the § 1983 claims asserted against Labat in his individual capacity, Labat argues that he is entitled to qualified immunity for those claims. [Doc. 21-1 at 11–19]. In response, Parker argues that Labat is not entitled to qualified immunity. [Doc. 24 at 12–16].

Qualified immunity protects government officials performing discretionary functions from suits for damages brought against them in their individual capacities. *Morris v. Town of Lexington, Ala.*, 748 F.3d 1316, 1321 (11th Cir. 2014). The Eleventh Circuit applies a two-part analysis to determine whether a government official is entitled to qualified immunity. *DeMarcus v. Univ. of S. Ala.*, 133 F.4th 1305, 1317 (11th Cir. 2025). First, the official must show that he "was acting within the scope of [his] discretionary authority when the allegedly wrongful acts occurred." *Id.* (internal quotation marks and citation omitted). The burden then shifts to the plaintiff to show that he or she suffered "a constitutional violation that is clearly established." *Id.* (internal quotation marks and citation omitted). "A right

---

jurisdiction are not judgments on the merits and are to be entered without prejudice." *Dupree v. Owens*, 92 F.4th 999, 1007 (11th Cir. 2024).

may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Id.* (internal quotation marks and citation omitted).

A Georgia sheriff has discretionary authority to make employment decisions regarding sheriff's office employees. *See Ezell v. Darr*, 951 F. Supp. 2d 1316, 1337 (M.D. Ga. 2013), *aff'd*, 802 F.3d 1217 (11th Cir. 2015). Here, the § 1983 claims relate to Labat's decisions regarding Parker's employment. *See* [Am. Compl. ¶¶ 19, 21–24, 30, 33–35 (alleging that Labat took adverse employment actions against Parker)]. Parker's allegations thus demonstrate that Labat acted within his discretionary authority when he terminated Parker's employment. *Ezell*, 951 F. Supp. 2d at 1337. Labat, therefore, has met his burden to show that he acted within his discretionary authority in terminating Parker's employment.[8]

---

[8] In his response brief, Parker states that he "does not concede . . . that [Labat] acted within the scope of his discretionary authority in terminating him," but he points to no case law suggesting that Labat did not act within his discretionary authority. *See generally* [Doc. 24 at 13].

The burden next shifts to Parker to show that Labat's actions violated a clearly established constitutional right. *Morris*, 748 F.3d at 1322. In his response brief, Parker argues that Labat fired him after he filed an EEOC Charge complaining of age discrimination and that "[t]he constitutional right to be free from age discrimination in employment is clearly established." [Doc. 24 at 13–14].

Parker's argument fails for three reasons. First, Parker's Amended Complaint does not contain a § 1983 claim relating to age discrimination. *See generally* [Am. Compl.]. Instead, Parker's § 1983 claims relate only to alleged violations of his First Amendment rights. *See* [Am. Compl. ¶¶ 41–44 (asserting a § 1983 claim for alleged violations of Parker's First Amendment right to freedom of political affiliation); *id.* ¶¶ 55–60 (alleging that Defendants violated Parker's First Amendment right to free speech); *id.* ¶¶ 61–64 (alleging that Defendants retaliated against Parker for supporting Labat's opponent, in violation of Parker's First Amendment right to free speech)].[9] Second, even if Parker had asserted an age discrimination claim under § 1983, the ADEA would preempt it. *See Collins v. Fulton Cnty. Sch. Dist.*, No. 1:12-cv-1299-ODE-JSA, 2012 WL 7802735, a *23 (N.D. Ga. Dec. 26, 2012) (noting that the ADEA provides "the exclusive remedy for claims of age discrimination and

---

[9] Defendants do not argue that qualified immunity applies to Parker's Title VII or ADEA claims. [Doc. 21-1 at 11–13; Doc. 25 at 3].

a plaintiff may not assert a separate claim under § 1983"), *adopted as modified by* 2013 WL 12177006 (N.D. Ga. Feb. 27, 2013); *see also Ford v. City of Oakwood, Ga.*, 905 F. Supp. 1063, 1066 (N.D. Ga. 1995) (finding that the ADEA preempted a § 1983 claim for age discrimination).[10] Third, the protected activity that Parker relies on (filing an EEOC Charge alleging age discrimination) occurred *after* Parker's termination. Parker alleges that he was terminated on April 2, 2024, and he did not file his EEOC Charge until September 12, 2024. [Am. Compl. ¶¶ 21, 25; Doc. 18 at 32–33]. Parker's allegations thus do not permit the Court to infer that Labat terminated Parker in retaliation for filing a Charge complaining about age discrimination.

Moreover, qualified immunity protects Labat for the § 1983 claims based on a First Amendment violation. Generally, "[p]ublic employment may not be conditioned upon requirements that violate constitutionally protected interests." *Terry v. Cook*, 866 F.2d 373, 375 (11th Cir. 1989). "A public employee's protection is not absolute, however. The court must balance 'the interests of the [employee],

[10] In his response brief, Parker argues that *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), "clearly established" that there is a "constitutional right to be free from unlawful age discrimination in employment." [Doc. 24 at 14–15]. This is a misstatement of the law. *Reeves* involved neither § 1983 nor the Constitution; it was an ADEA case. The word "Constitution" does not appear in the decision. *See generally Reeves*, 530 U.S. at 133–54.

as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* (alteration in original) (quoting *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968)). "Because of the variety of situations in which critical statements may be the basis for discharge of a public employee, there is no general standard for determining in whose favor the balance is struck." *Id.* "Rather, the courts have developed standards which distinguish two types of cases—those involving employee expression and those involving 'raw political patronage.'" *Id.*

First Amendment claims involving "political patronage," or claims "in which political allegiance is solely at issue, not the content of the employee's political speech," are evaluated under the test adopted by the Supreme Court in *Elrod v. Burns*, 427 U.S. 347 (1976), and *Branti v. Finkel*, 445 U.S. 507 (1980). Under the *Elrod-Branti* test, "[t]he First Amendment protects public employees from adverse employment actions based on political patronage, but only if political loyalty is an inappropriate requirement for the effectiveness of a given employee's position, as that position is defined by state and local law." *Ezell v. Winn*, 802 F.3d 1217, 1222 (11th Cir. 2015).

The Eleventh Circuit has concluded that under Georgia law, political loyalty is an appropriate requirement for the job of a deputy sheriff because "a deputy sheriff

has the same powers and duties as the sheriff and is thus the 'alter ego' of the sheriff." *Ezell*, 802 F.3d at 1225; *see also id.* at 1222 (stating that "political loyalty is an appropriate requirement for the job of deputy sheriff because of the 'closeness and cooperation required between sheriffs and their deputies' in fulfilling overlapping duties") (quoting *Terry*, 866 F.2d at 377). A Georgia sheriff thus does not violate a deputy's First Amendment rights by firing the deputy for supporting the sheriff's political rival. *Hein v. Kimbrough*, 942 F. Supp. 2d 1308, 1319 (N.D. Ga. 2013). Here, all of Parker's claimed protected speech or activities relate to his alleged support of Labat's opponent in the Sheriff's race. [Am. Compl. ¶¶ 17–18, 30]. Parker thus fails to state plausible First Amendment claims against Labat. *Ezell*, 802 F.3d at 1225; *see also Hein v. Kimbrough*, No. 1:09-cv-1791-JEC, 2011 WL 13262377, at *7 (N.D. Ga. Mar. 28, 2011) (noting that a sheriff's deputy ordinarily could not pursue a First Amendment claim alleging retaliation based on the deputy's statements of support regarding a particular sheriff's candidate, and explaining these statements of support could include attending political rallies, "hosting and attending meet and greets, debates, and church events; passing out literature, flyers, and pens for a candidate, displaying a campaign poster in a car; making statements of support for a candidate; and suggesting the need for a new sheriff") (internal quotation marks and citation omitted).

In his response brief, Parker argues that the *Elrod-Branti* exception does not apply here because Parker "alleges he was a line-level deputy with no policy-making authority or confidential advisory role." [Doc. 24 at 18–19]. To support his argument, Parker cites *Moss v. City of Pembroke Pines*, 782 F.3d 613 (11th Cir. 2015). [*Id.* at 18]. *Moss*, however, did not involve a sheriff's deputy or political patronage; the plaintiff in *Moss* was a firefighter who was terminated after he complained about "the City's handling of its budget and collective bargaining negotiations." *Moss*, 782 F.3d at 616–17. The court in *Moss* did not apply the *Elrod-Branti* analysis and instead used the test applicable to employee expression cases. *Id.* at 617–22.

Parker also cites *Cutliffe v. Cochran*, 117 F.3d 1353 (11th Cir. 1997), for the proposition that "[w]hether political loyalty is an appropriate requirement depends on the particular responsibilities of the position." [Doc. 24 at 18 (quoting *Cutliffe*, 117 F.3d at 1358)].[11] *Cutliffe*, however, distinguished between sheriff's deputies and other sheriff's office personnel, noting that whether political loyalty was a requirement for non-deputy sheriff's office personnel was a fact-specific question. *See Cutliffe*, 117 F.3d at 1357 n.2 ("We note that the *Terry* court properly applies

[11] The quote that Parker includes in his brief as coming from *Cutliffe* does not appear in that opinion.

*Branti* when it turns to the claims brought by the other personnel in the sheriff's office: 'This is a determination that depends upon the actual responsibilities of each position and the relationship of each to the sheriff.'") (quoting *Terry*, 866 F.2d at 378). Thus, *Cutliffe* does not, as Parker suggests, reflect that whether political loyalty is required for a sheriff's deputy position depends on the deputy's job duties; it actually stands for the opposite conclusion. *Id.*

Parker also relies on *Underwood v. Hawkins*, 698 F.3d 1335 (11th Cir. 2012). *See* [Doc. 18 (stating that *Underwood* "reaffirmed that *Branti* requires an analysis of the 'specific responsibilities of the position in question'") (quoting *Underwood*, 698 F.3d at 1342–43)].[12] In *Underwood*, however, the Eleventh Circuit discussed *Terry*, noting that *Terry* distinguished between sheriff's deputies and other employees in a sheriff's office. *Underwood*, 698 F.3d at 1340–41. The Eleventh Circuit noted that in *Terry*, "[w]ithout looking to see what the deputy sheriffs actually did in the course of their everyday duties, or allowing the case to proceed on discovery on such matters, we held that the sheriff could dismiss them without violating the First Amendment because of the need for loyalty." *Id.* at 1341. The court stated that in *Terry*, it "came to a different conclusion as to the other employees who had been

[12] The quote that Parker includes in his brief as coming from *Underwood* does not appear in that opinion.

dismissed, explaining that, as to them, the need for loyalty to the sheriff could not be determined as a matter of law." *Id.* Thus, Parker's reliance on *Underwood* is misplaced.[13]

Parker also argues that the *Elrod-Branti* defense "is an affirmative defense, and courts repeatedly hold that it cannot justify dismissal at the 12(b)(6) stage unless it is apparent on the face of the complaint." [Doc. 24 at 19]. To support this contention, Parker cites *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). *See* [*id.* ("'Qualified immunity and Elrod-Branti defenses generally depend on factual development.'") (quoting *Randall*, 610 F.3d at 707 n.2)]. The portion of *Randall*, that Parker cites does not contain this language. *See Randall*, 610 F.3d at 707 n.2. And *Randall* does not involve a sheriff's deputy; the plaintiff in *Randall* was a chief of staff for a district attorney who was fired after he ran for office against the district attorney's husband. *Id.* at 703–04. *Randall* thus does not apply here.[14]

---

[13] Parker also cites to a purported case styled *Hall v. Timmons*, 987 F.3d 1189, 1198 (11th Cir. 2021), for the proposition that "[n]ot all public safety positions require political allegiance." [Doc. 24 at 18 (internal quotation marks omitted)]. This case, however, does not appear to exist in the Eleventh Circuit or in any other federal court. Nor does the language quoted by Parker appear in any published Eleventh Circuit opinion.

[14] Parker also cites a Fourth Circuit case for the proposition that "the *Elrod-Branti* issue 'turns on the nature of the job' and should not be resolved before factual discovery." [Doc. 24 at 19 (quoting *Akers v. Caperton*, 998 F.2d 220, 224 (4th Cir. 1993))]. *Akers*, however, is not binding on this Court, and the Eleventh Circuit's

In short, Parker fails to state plausible First Amendment claims against Labat, and he has not alleged a constitutional violation. Nor has Parker plausibly alleged that Labat's actions violated clearly established law. Labat thus is entitled to qualified immunity for Parker's individual capacity § 1983 claims in Counts One, Four, and Five. These claims should be dismissed.

**c. Parker Has Not Pled a Plausible ADEA Claim Against Labat**

A plaintiff asserting an ADEA disparate treatment claim must allege facts suggesting that: "(1) he was a member of the protected group between the age of forty and seventy; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the position from which he was discharged; and (4) he was qualified to do the job from which he was discharged." *Liebman v.*

---

position on patronage dismissals of deputy sheriffs differs from the Fourth Circuit's position. *See Cutliffe*, 117 F.3d at 1357 ("After examining the various tasks of deputy sheriffs, courts in the Third, Fourth, Fifth, and Tenth Circuits have ruled that those job functions do not require political affiliation with the elected sheriff for their effective performance. Thus, deputy sheriffs are entitled to protection from patronage dismissals. In addition to this circuit, only the Seventh Circuit has held that deputy sheriffs may be hired or fired on political grounds.") (footnote omitted). The Court must follow the Eleventh Circuit's position. *See Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1240 n.15 (11th Cir 2002) (noting that only the decisions of the Supreme Court and the Eleventh Circuit are binding on district courts in the Eleventh Circuit). And continuing with the recurring theme of Parker's response brief, the quote that Parker presents does not actually appear in *Akers*.

*Metropolitan Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015). Here, Parker has satisfied the first and second elements because he alleges that he was sixty-four years old when his employment was terminated (or when he was forced to resign or allegedly constructively discharged). [Am. Compl. ¶¶ 21–24, 46, 58]. Parker, however, has not pled facts plausibly suggesting that he was replaced by a substantially younger person or that he was qualified for his position. Parker simply alleges that "[a] substantially younger person filled the position [Parker] was discharged from" [Am. Compl. ¶ 48], and Parker "was qualified to perform the job duties from which he was discharged" [*id.* ¶ 49]. These allegations are conclusions or legal statements, and they must be disregarded. *Howard v. MHT USA LLC*, No. 1:21-cv-4570-CAP-RGV, 2022 WL 2389277, at *8 (N.D. Ga. May 2, 2022), adopted by 2022 WL 18777356 (N.D. Ga. May 18, 2022); *Doe v. Rollins Coll.*, 352 F. Supp. 3d 1205, 1208 (M.D. Fla. 2019). Parker thus has not pled the third and fourth elements of his ADEA disparate treatment claim. This claim should be dismissed.

And Eleventh Amendment immunity bars any ADEA claim that Parker may assert against Labat in his official capacity for damages or retrospective injunctive

relief.[15] A claim against an official in his official capacity is essentially a suit against the governmental entity for which the official works. *Busby v. City of Orlando*, 931 F.2d 764, 766 (11th Cir. 1991). Under the Eleventh Amendment, federal courts lack "jurisdiction over suits against nonconsenting States." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000). Absent a waiver by a State or abrogation by Congress, the Eleventh Amendment shields states from suits for damages filed against them by private citizens. *Stroud v. McIntosh*, 722 F.3d 1294, 1298 (11th Cir. 2013). Eleventh Amendment immunity also extends to arms of the states, and under Georgia law, a sheriff is considered an arm of the state when sued in his or her official capacity and is entitled to Eleventh Amendment immunity for employment-related decisions. *Pellitteri v. Prine*, 776 F.3d 777, 780–83 (11th Cir. 2015); *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003); *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1331–38 (11th Cir. 2003). The Supreme Court has held that Congress lacked authority to abrogate states' Eleventh Amendment immunity for ADEA claims. *Stroud*, 722 F.3d at 1298 (citing *Kimel*, 528 U.S. at 91–92). Eleventh Amendment immunity

[15] Parker opposes this portion of the motion to dismiss, and he purports to incorporate the portion of his response relating to his § 1983 official capacity claims. [Doc. 24 at 21]. In this portion of his response, however, Parker agreed that he was not seeking monetary damages and retrospective equitable relief for his § 1983 official capacity claims. [*Id.* at 14]. Thus, it is unclear what Parker intended to argue.

thus bars any official capacity ADEA claim for damages or retrospective injunctive against Labat, and this claim should be dismissed without prejudice for lack of subject matter jurisdiction.[16]

#### d. Parker Has Not Pled a Plausible Title VII Claim Against Labat

Parker alleges that Labat violated Title VII by retaliating against him after he complained to his supervisor "[a]s a result of Defendants' mistreatment of [him] based on his age and his opposition to" Labat's political campaign. [Am. Compl. ¶ 50; *see also id.* ¶ 52 (stating that Parker's "opposition to mistreatment based on his age by [Labat] in his official capacity and the FCSO is [an] unlawful employment practice under Title VII")]. Title VII prohibits retaliation against an employee who engages in protected activity under Title VII. 42 U.S.C. § 2000e-3(a). A plaintiff asserting a Title VII retaliation claim must plead facts suggesting that "(1) [he] engaged in statutorily protected conduct, (2) [he] suffered an adverse employment action, and (3) there is a causal connection between the two." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234–1235 (11th Cir. 2010).

---

[16] The Eleventh Amendment does not bar claims for prospective injunctive relief. Parker's official capacity ADEA claim for prospective injunctive relief, however, fails because Parker has not pled a plausible underlying claim. *U.S. Army Corps. of Eng'rs*, 424 F.3d at 1127.

To state a Title VII retaliation claim, a plaintiff must allege that he objected "to conduct that, as a factual matter, touches on an *employment practice of the employer*." *Bevill v. UAB Walker Coll.*, 62 F. Supp. 2d 1259, 1274 (N.D. Ala. 1999) (emphasis in original). But "'[a] complaint about an employment practice constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes employment discrimination.'" *Murphy v. City of Aventura*, 383 F. App'x 915, 918 (11th Cir. 2010) (per curiam) (quoting EEOC Compl. Man. (CCH) §§ 8-II-B(2) (2006)); *see also Wheatfall v. Bd. of Regents of Univ. Sys. of Ga.*, 9 F. Supp. 3d 1342, 1353 (N.D. Ga. 2014) (noting that the employee's complaint "must have put [his employer] on notice that []he was opposing a practice made unlawful by Title VII").

Here, Parker has not alleged facts plausibly suggesting that he opposed conduct or an employment practice that he believed violated Title VII. *See generally* [Am. Compl.]. Parker alleges that he opposed age discrimination, but Title VII does not protect against age discrimination. *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination based on race, sex, color, religion, or national origin); *Richardson v. Solvay Specialty Polymers, USA, Inc.*, No. 1:23-cv-5929-MHC-CMS, 2024 WL 6086097, at *4 (N.D. Ga. Oct. 17, 2024) (noting that Title VII does not prohibit discrimination based on age), *adopted by* 2024 WL 6085671 (N.D. Ga. Nov. 18,

2024). Parker also alleges that he opposed Labat's political campaign and supported Labat's opponent, but these alleged activities do not relate to complaints about, or speech related to, conduct prohibited by Title VII, i.e., discrimination based on sex, race, color, religion, or national origin. Parker's alleged conduct thus cannot qualify as protected conduct under Title VII, and he has not pled a plausible Title VII retaliation claim. *Bevill*, 62 F. Supp. 2d at 1274; *see also McGee v. Kennedy*, No. 1:24-cv-1642-AT-RGV, 2025 WL 2020064, at *5 (N.D. Ga. May 1, 2025) (concluding that a plaintiff had not pled a plausible Title VII retaliation claim where she failed to allege facts suggesting that she engaged in any conduct protected by Title VII), *adopted by* 2025 WL 2020041 (N.D. Ga. June 2, 2025).

Even if Parker had pled facts to support a Title VII retaliation claim, the claim would still be subject to dismissal. A plaintiff asserting a claim under Title VII must exhaust his administrative remedies before filing suit by filing a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(b); *Gregory v. Ga. Dep't of Human Resources*, 355 F.3d 1277, 1279 (11th Cir. 2004). "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000) (internal quotation marks and citation omitted). "When a plaintiff alleges a claim in [his] complaint that is not reasonably

related to the allegations in [his] EEOC charge, the court must find that the plaintiff has failed to exhaust [his] administrative remedies related to the new claim." *Jordan-Philadelphia v. Atlanta Med. Ctr./Wellstar*, No. 1:19-cv-116-LMM-LTW, 2020 WL 10147133, at *2 (N.D. Ga. Apr. 28, 2020), *adopted by* 2020 WL 10147134 (N.D. Ga. May 20, 2020). Here, Parker only complained of age discrimination in his EEOC Charge. *See* [Am. Compl. ¶ 25 (stating that Parker's Charge "alleged a violation of the [ADEA]"); Doc. 18 at 30–33 (reflecting that Parker's Charge complained of an alleged ADEA violation)]. Parker thus failed to exhaust his administrative remedies for his Title VII claim.

In his response to the motion to dismiss, Parker argues that the scope of the EEOC's investigation could have broadened to include issues that arose during the investigation and were reasonably related to his Charge. [Doc. 24 at 23–24]. The Eleventh Circuit has rejected a similar argument. *See Hillemann v. University of Cent. Fla.*, 167 F. App'x 747, 749–50 (11th Cir. 2006) (affirming the dismissal of a plaintiff's Title VII and retaliation claims where the plaintiff alleged only age discrimination in his EEOC Charge and concluding that the EEOC's investigation of the age discrimination claim could not reasonably be expected to broaden to include the Title VII discrimination and retaliation claims). Parker thus failed to

exhaust his administrative remedies for his Title VII claim, and the claim should be dismissed.[17]

## II. <u>PARKER'S COUNSEL SHOULD RECEIVE SANCTIONS</u>

On January 5, 2025, I issued a Show Cause Order notifying Plaintiff's counsel, E. Earle Burke, that the brief he filed in response to the motion to dismiss "contain[ed] several misstatements of law, non-existent quotations from cases, and at least one case citation that d[id] not appear to exist." [Doc. 28 at 1–2]. I identified the following misstatements of law, non-existent quotations, and non-existent case citations provided by Attorney Burke in Parker's response to Defendants' motion to dismiss:

- Parker argues that *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), "clearly established" that there is a "constitutional right to be free from unlawful age discrimination in employment." [Doc. 24 at 14–15]. This is a misstatement of the law. *Reeves* involved neither § 1983 nor the Constitution; it was an ADEA case. The word "Constitution" does not appear in the decision. *See generally Reeves*, 530 U.S. at 133–54.

- Parker argues that the *Elrod-Branti* exception does not apply here because Parker "alleges he was a line-level deputy with no policy-making authority or confidential advisory role." [Doc. 24 at 18–19]. To support his argument, Parker cites *Moss v. City of Pembroke Pines*, 782 F.3d 613 (11th Cir. 2015). [*Id.* at 18]. *Moss*, however, did not involve a sheriff's deputy or political patronage; the plaintiff in *Moss* was a firefighter who was terminated after he

---

[17] Because Parker has not pled a plausible underlying Title VII claim, he cannot obtain prospective injunctive relief under Title VII. *U.S. Army Corps. of Eng'rs*, 424 F.3d at 1127.

complained about "the City's handling of its budget and collective bargaining negotiations." *Moss*, 782 F.3d at 616–17. The court in *Moss* did not apply the *Elrod-Branti* analysis and instead used the test applicable to employee expression cases. *Id.* at 617–22.

- Parker also cites *Cutliffe v. Cochran*, 117 F.3d 1353 (11th Cir. 1997), for the proposition that "[w]hether political loyalty is an appropriate requirement depends on the particular responsibilities of the position." [Doc. 24 at 18 (quoting *Cutliffe*, 117 F.3d at 1358)]. This quote does not actually appear in the *Cutliffe* opinion. Moreover, it is clear that *Cutliffe* was distinguishing between sheriff's deputies and other sheriff's office personnel and that it simply noted that whether political loyalty was a requirement for <u>non-deputy sheriff's office personnel was a fact-specific question</u>. *See Cutliffe*, 117 F.3d at 1357 n.2 ("We note that the *Terry* [*v. Cook*, 866 F.2d 373 (11th Cir. 1989)] court properly applies *Branti* when it turns to the claims brought by the other personnel in the sheriff's office: 'This is a determination that depends upon the actual responsibilities of each position and the relationship of each to the sheriff.'") (quoting *Terry*, 866 F.2d at 378). Thus, *Cutliffe* does not reflect that whether political loyalty is required for a sheriff's deputy position depends on the deputy's job duties—it actually stands for the opposite conclusion. *Id.*

- Parker also states that *Underwood v. Hawkins*, 698 F.3d 1335 (11th Cir. 2012) "reaffirmed that *Branti* requires an analysis of the 'specific responsibilities of the position in question.'" [Doc. 24 at 18 (quoting *Underwood*, 698 F.3d at 1342–43)]. This quote does not appear in *Underwood*. Nor does the case stand for what Parker claims it does. In *Underwood*, the Eleventh Circuit discussed *Terry*, noting that *Terry* distinguished between sheriff's deputies and other employees in a sheriff's office. *Underwood*, 698 F.3d at 1340–41. The Eleventh Circuit noted that in *Terry*, "[w]ithout looking to see what the deputy sheriffs actually did in the course of their everyday duties, or allowing the case to proceed on discovery on such matters, we held that the sheriff could dismiss them without violating the First Amendment because of the need for loyalty." *Id.* at 1341. The court stated that in *Terry*, it "came to a different conclusion as to the other employees who had been dismissed, explaining that, as to them, the need for loyalty to the sheriff could not be

determined as a matter of law." *Id.* Thus, Parker's reliance on *Underwood* is misplaced.

- Parker also cites to "*Hall v. Timmons*, 987 F.3d 1189, 1198 (11th Cir. 2021)" for the proposition that "[n]ot all public safety positions require political allegiance." [Doc. 24 at 18 (internal quotation marks omitted)]. This case, however, does not appear to exist in the Eleventh Circuit or in any other federal court. Nor does the language quoted by Parker appear in any published Eleventh Circuit opinion.

- Parker also cites a Fourth Circuit case, *Akers v. Caperton*, 998 F.2d 220, 224 (4th Cir. 1993) for the proposition that "the *Elrod-Branti* issue 'turns on the nature of the job' and should not be resolved before factual discovery." [Doc. 24 at 19 (quoting *Akers*, 998 F.2d at 224 (4th Cir. 1993))]. The quoted language does not appear in the *Akers* decision.

[*Id.* at 4–6 (footnote omitted)].

I also notified Attorney Burker that "Parker's Amended Complaint contain[ed] claims that could be considered to be frivolous." [Doc. 28 at 2]. I identified the following claims in Parker's Amended Complaint that appeared to be frivolous:

- Parker alleges that Defendants violated Title VII by retaliating against Parker after he complained to his supervisor "[a]s a result of Defendants' mistreatment of [him] based on his age and his opposition to" Labat's political campaign. [Am. Compl. ¶ 50; *see also id.* ¶ 52 (stating that Parker's "opposition to mistreatment based on his age by [Labat] in his official capacity and the FCSO is [an] unlawful employment practice under Title VII")]. It is well-settled that Title VII does not protect against age discrimination. *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination based on race, sex, color, religion, or national origin); *Richardson v. Solvay Specialty Polymers, USA, Inc.*, No. 1:23-cv-5929-MHC-CMS, 2024 WL 6086097, at *4 (N.D. Ga. Oct. 17, 2024) (noting that Title VII does not prohibit discrimination based on age), *adopted by* 2024 WL 6085671 (N.D. Ga. Nov. 18, 2024). It is also well-settled

that a Title VII retaliation claim must be based on conduct that is protected under Title VII. *McGee v. Kennedy*, No. 1:24-cv-1642-AT-RGV, 2025 WL 2020064, at *5 (N.D. Ga. May 1, 2025).

- Parker asserts claims against the Fulton County Sheriff's Office. It is well-settled that in Georgia, sheriff's offices and jails are not legal entities subject to suit. *See Brown v. Newton Cnty. Sheriff's Office*, 273 F. Supp. 3d 1142, 1161 (N.D. Ga. 2017) ("The Eleventh Circuit has examined Georgia law and concluded that sheriff's departments are not considered legal entities subject to suit.").

[*Id.* at 6].

I ordered Attorney Burke to show cause by January 12, 2026, "why he should not be sanctioned under Federal Rule of Civil Procedure 11(b) for making the misstatements and misrepresentations to the Court identified above and for asserting the claims identified above." [Doc. 28 at 6]. I stated:

> To satisfy this requirement, Attorney Burke is **ORDERED** to submit a **sworn written statement** explaining how the misstatements and misrepresentations identified above occurred and explaining why Attorney Burke believed that the frivolous claims identified above were viable claims. The sworn written statement must also state whether Attorney Burke used AI to prepare Parker's response brief.

[*Id.* at 6–7 (emphasis and capitalization in original)]. I cautioned, "If Attorney Burke fails to show cause as directed in this Order, I will recommend that sanctions be imposed under Rule 11(b)." [*Id.* at 7].

Attorney Burke did not show cause as directed in the January 5 Show Cause Order. He did not respond to the Order in any way. *See generally* [Docket]. For

the reasons below, I recommend that Attorney Burke be sanctioned under Rule 11(b).

Federal Rule of Civil Procedure 11(b) states that, in presenting any paper to the Court, an attorney or *pro se* party "certifies that . . . after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." FED. R. CIV. P. 11(b)(2). The submission of fake or misrepresented case citations and quotations to the Court—whether resulting from the use of artificial intelligence ("AI") or old-fashioned attorney error or neglect—is sanctionable under Rule 11(b). *See ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1354 (S.D. Fla. 2025) (finding that Rule 11 sanctions were deserving for a party who "continued to make submissions to the Court using AI without checking the veracity of cases and citations submitted to the Court and his adversaries"); *Jackson v. Auto-Owners Ins. Co.*, No. 7:24-cv-136-WLS, 2025 WL 1932274, at *3–4 (M.D. Ga. July 14, 2025) (observing that the "failure . . . to thoroughly review documents prepared using AI . . . is sanctionable under Rule 11"); *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enterprises, LLC*, No. 17-cv-81140-DIMITROULEAS/MATTHEWMAN, 2025 WL 1440351, at *4 (S.D. Fla. May 20, 2025) (concluding that attorneys "violated

Rule 11 in submitting a fake hallucinated case citation which allegedly supported a principle of law for which they were advocating"); *Gordon v. Wells Fargo Bank N.A. Inc.*, No. 5:24-cv-388-CAR, 2025 WL 1057211, at *3 (M.D. Ga. Apr. 8, 2025) ("The imposition of sanctions [under Rule 11] against parties who submit fake citations is also not uncommon." (citation and footnote omitted). As discussed above, Attorney Burke presented three quotations to the Court that did not exist, cited a non-existent case, and misstated the law at least three times. This conduct warrants sanctions.

A party may also be sanctioned under Rule 11(b) for asserting frivolous claims. *See Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001) (per curiam) (noting that Rule 11 sanctions may be imposed "'when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose'") (quoting *Worldwide Primates, Inc. v. McGreal*, 87 F3d 1252, 1254 (11th Cir. 1996)). As discussed above, Parker's Amended Complaint contains a frivolous Title VII retaliation claim and frivolous claims against the FCSO. This is especially problematic because Defendants' first motion to dismiss put Attorney Burke on notice that these claims failed as a matter

of law, yet Attorney Burke still chose to include the claims in Parker's Amended Complaint. This conduct warrants sanctions.

The Court, acting on its own initiative, "may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b). FED. R. CIV. P. 11(c)(3). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction"—up to and including dismissal. FED. R. CIV. P. 11(c)(1); *see also McDonald v. Emory Healthcare Eye Ctr.*, 391 F. App'x 851, 853 (11th Cir. 2010) (per curiam) (affirming dismissal under Rule 11).

As stated above, Attorney Burke was given notice of his potentially sanctionable conduct and an opportunity to show cause. [Doc. 28]. Attorney Burke failed to respond in any way. *See generally* [Docket]. I recommend that the Court impose sanctions against Attorney Burke under Rule 11(b), including one or more of the following: (1) that Attorney Burke be required to attend a six-hour continuing legal education course on employment law or legal research and writing within the next six months, and that he be required to submit proof of his attendance to the Court; (2) that Attorney Burke be required to pay a fine of $1,500 for his misconduct; or (3) that for the next three years, Attorney Burke be required to submit a sworn

statement with every document he files in this Court verifying that he has personally checked all citations and quotations in the filing to ensure accuracy.

## III. CONCLUSION

Accordingly, I **RECOMMEND** that the FCSO's and Labat's motion to dismiss [Doc. 21] be **GRANTED**, and that the Amended Complaint [Doc. 18] be **DISMISSED**. I recommend that Counts One through Five be **DISMISSED with prejudice** as to the FCSO because the FCSO is not a legal entity subject to suit. I recommend that the following claims be **DISMISSED without prejudice** because they are barred by Eleventh Amendment immunity: Parker's official capacity § 1983 claims against Labat for damages and retrospective injunctive relief in Counts One, Four, and Five and Parker's official capacity ADEA claim against Labat for damages and retrospective injunctive relief in Count Two. I recommend that the following claims be **DISMISSED with prejudice**: Parker's individual capacity Section 1983 claims against Labat, as well as his official capacity Section 1983 claims against Labat for prospective injunctive relief in Counts One, Four, and Five; Parker's individual capacity ADEA claim against Labat and his official capacity ADEA claim against Labat for prospective injunctive relief in Count Two; and Parker's Title VII retaliation claim against Labat in Count Three.

I also **RECOMMEND** that Plaintiff's counsel, Attorney E. Earle Burke, be **SANCTIONED** under Federal Rule of Civil Procedure 11(b) for the reasons outlined in this Report and Recommendation.

Because this is a Final Report and Recommendation, and there is nothing more pending before the undersigned, I **DIRECT** the Clerk to **TERMINATE** the referral of this civil action to me.

**SO REPORTED AND RECOMMENDED**, this 21st day of January, 2026.

CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE